MORGAN, LEWIS & BOCKIUS LLP

Joshua Dorchak
Matthew C. Ziegler
Melissa Y. Boey
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6700
Facsimile: (212) 309-6000

- and -

John C. Goodchild, III
1701 Market Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 963-5020
Facsimile: (215) 963-5001

*Counsel to Margot MacInnis and Cosimo Borrelli, as*
*Joint Official Liquidators of Platinum Intermediate Fund*

## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

In re:

PLATINUM PARTNERS VALUE
ARBITRAGE INTERMEDIATE FUND LTD.
(IN OFFICIAL LIQUIDATION),[1]

          Debtors in
          Foreign Proceedings.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

Chapter 15

Case No. 17-_____ (___)

(Joint Administration Requested)

## VERIFIED PETITION FOR RECOGNITION OF FOREIGN INSOLVENCY
## PROCEEDING AND APPLICATION FOR ADDITIONAL RELIEF PURSUANT TO
## <u>SECTIONS 1504, 1509, 1515, 1517, 1520 AND 1521 OF THE BANKRUPTCY CODE</u>

---

[1] The last four digits of the debtor's United States Tax Identification Number, or similar foreign identification number, is 9530.

Margot MacInnis and Cosimo Borrelli, duly appointed joint official liquidators (the "Petitioners" or "Liquidators") of Platinum Partners Value Arbitrage Intermediate Fund Ltd. (in Official Liquidation) (the "Intermediate Fund"), which has been placed into liquidation (the "Cayman Liquidation") by the Financial Services Division of the Grand Court of the Cayman Islands (the "Grand Court") (Cause No. FSD 30 of 2017 (AJJ)) pursuant to a petition for the winding up of the Intermediate Fund under section 92 of the Companies Law of the Cayman Islands (2016 Revision) (the "Companies Law"), by its undersigned United States counsel, respectfully submit the Official Form Petition, this Verified Petition (together, the "Petition"), the accompanying Declaration of Margot MacInnis (the "MacInnis Declaration"), and the Declaration of Ian Lambert (the "Lambert Declaration") (together with the MacInnis Declaration, the "Declarations"), for entry of an Order pursuant to Chapter 15 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"):

(i) recognizing the Cayman Liquidation as the foreign main proceeding, under sections 1515 and 1517 of the Bankruptcy Code;

(ii) recognizing the Petitioners as the Intermediate Fund's foreign representatives under sections 1509 and 1512 of the Bankruptcy Code; and

(iii) granting relief pursuant to sections 1520 and 1521 of the Bankruptcy Code.

## PRELIMINARY STATEMENT

1.     The purpose of Chapter 15 of the Bankruptcy Code is to provide effective mechanisms for dealing with cases of cross-border insolvency, with the express objectives of cooperation between United States courts, trustees, examiners, debtors and debtors in possession and the courts and other competent authorities of foreign countries; greater legal certainty for trade and investment; fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested entities, including the debtor; the protection and maximization of the debtor's assets; and the facilitation of the rescue of financially troubled

businesses. *See, e.g., In re Suntech Power Holdings Co., Ltd.,* 520 B.R. 399, 413 (Bankr. S.D.N.Y. 2014); 11 U.S.C. § 1501(a)(1)-(5)).

2.      This Court is already overseeing the Chapter 15 proceedings[2] of the Platinum Partners Value Arbitrage Fund (International) Ltd. (in Official Liquidation) (the "International Fund") and Platinum Partners Value Arbitrage Fund L.P. (in Official Liquidation) (the "Master Fund") (collectively with the Intermediate Fund, the "Funds"), which are also in liquidation proceedings in the Cayman Islands.  The Intermediate Fund is the remaining entity in the Platinum Partners Value Arbitrage offshore master/feeder structure (the "PPVA Offshore Group") yet to receive Chapter 15 recognition of its corresponding Cayman liquidation.[3] Because the Intermediate Fund serves as the conduit between the International Fund and the Master Fund, the Liquidators request recognition of the Cayman Liquidation so that the entire PPVA Offshore Group can benefit from the protections of Chapter 15 of the Bankruptcy Code, and to allow the winding up of the PPVA Offshore Group to be administered and implemented in an orderly and efficient manner across the three PPVA entities.

3.      As this Petition, the accompanying Declarations and the exhibits thereto demonstrate, the Cayman Liquidation should be recognized as the Intermediate Fund's foreign main proceeding.

4.      The Liquidators seek precisely the type of relief that chapter 15 was designed to provide, and the Cayman Liquidation and this Petition meet all the requirements for recognition and the requested relief.  The Liquidators were appointed by the Grand Court to administer the Intermediate Fund in connection with the court-ordered Cayman Liquidation of the Intermediate

---

[2] *In re Platinum Partners Value Arbitrage Fund L.P.*, Bankr. S.D.N.Y. Case No. 16-12925 (SCC);
*In re Platinum Partners Value Arbitrage Fund (International) Ltd.*, Bankr. S.D.N.Y. Case No. 16-12934 (SCC).
[3] In addition to the Intermediate Fund, one additional fund acts as a direct feeder fund into, and is a limited partner of, the Master Fund.  This entity is registered in Delaware and is known as Platinum Partners Value Arbitrage Fund (USA) L.P. (the "Onshore Fund").

Fund pursuant to the Companies Law, a law relating to insolvency or adjustment of debt. *MacInnis Declaration* ¶ 2; *Lambert Declaration* ¶ 24.

5.      Likewise, the Cayman Liquidation is a collective judicial proceeding as referenced in 15 U.S.C. § 101(23), subject to the oversight and control of the Grand Court, encompassing all stakeholders of the Intermediate Fund. *Lambert Declaration* ¶¶ 24-25. This proceeding is pending in the Cayman Islands, the country in which the Intermediate Fund was formed, maintains a registered office, maintains its center of main interests ("COMI"), and where the Liquidators are engaged in the wind-down and liquidation of the Intermediate Fund's businesses and affairs, alongside the winding-down of the International Fund and the Master Fund, the other two offshore entities in the Intermediate Fund's master/feeder structure. *MacInnis Declaration* ¶¶ 25-29.

6.      Pursuant to section 1516(c) of the Bankruptcy Code, the Cayman Islands are presumed to be the Intermediate Fund's COMI because the Intermediate Fund was incorporated there and maintains its registered office there. *MacInnis Declaration* ¶ 9. This Petition and the accompanying Declarations further demonstrate that the Intermediate Fund's counterparties and other relevant stakeholders had clear and actual knowledge that the Intermediate Fund is a Cayman Islands entity. *Id.* ¶ 20. Since the commencement of the Cayman Liquidation, the Cayman Islands has been the demonstrable "nerve center" of the Intermediate Fund's ongoing liquidation and the Liquidators have conducted, or overseen the conducting of, the winding up of the Intermediate Fund from the Cayman Islands, meeting the requirements of a "foreign main proceeding" pursuant to sections 101(23), 1502(4), 1516(c), and 1517(b)(1) of the Bankruptcy Code. *Id.* ¶¶ 20, 25, 28.

4

7.      This and other Courts have recognized similar liquidation proceedings of Cayman Island entities as foreign main proceedings. *In re Platinum Partners Value Arbitrage Fund L.P.*, Bankr. S.D.N.Y. Case No. 16-12925 (SCC). *See, e.g., In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399 (Bankr. S.D.N.Y. 2014) (commencement of provisional Cayman Islands proceedings, together with subsequent activities of liquidators, had the effect of transferring holding company's COMI to Cayman); *In re Millard*, 501 B.R. 644, 647 (Bankr. S.D.N.Y. 2013); *In re AJW Offshore Ltd.*, No. 13-70078 (Bankr. E.D.N.Y. Feb. 5, 2013) [Docket No. 31]; *In re Bancredit Cayman Ltd. (in Liquidation),* No. 06-11026 (SMB) (Bankr. S.D.N.Y. June 16, 2006) [Docket No. 13]*; In re LDK Solar Co., Ltd.*, No. 14-12387 (PJW) (Bankr. D. Del. Nov. 21, 2014) [Docket No. 43] (recognizing Cayman Islands liquidation as foreign main proceeding); *In re Saad Invs. Fin. Co. (No. 5) Ltd.*, No. 09-13985 (KG) (Bankr. D. Del. Dec. 17, 2009) [Docket No. 47] (same); *see also In re Niton Fund SPC,* Case No. 15-13252 (SMB) (Bankr. S.D.N.Y. January 13, 2016) [Docket No. 7]*; In re Madison Niche Assets Fund, Ltd., et. al.*, No. 16-10043 (KJC) (Bankr. D. Del. March 1, 2016) [Docket No. 35].

8.      The Liquidators respectfully submit that: (i) the Cayman Liquidation is the foreign main proceeding within the meaning of sections 101(23) and 1502(4) of the Bankruptcy Code; (ii) the Liquidators are the duly appointed foreign representatives of the Intermediate Fund within the meaning of section 101(24); (iii) the Liquidators and the Petition comply with all the requirements of section 1515 and Bankruptcy Rule 1007(a)(4); and (iv) recognition of the Cayman Liquidation would not be contrary to public policy under Bankruptcy Code section 1506.

9.      Accordingly, this Court can and should enter an order recognizing the Cayman Liquidation as a foreign main proceeding under section 1517(b)(1).

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and sections 109 and 1501 of the Bankruptcy Code.

11.    The venue of this proceeding is proper in this District pursuant to 28 U.S.C. § 1410(3) to promote the efficiency and administration of justice, as the Master Fund and the International Fund, entities immediately above and below the Intermediate Fund in the PPVA Offshore Group, are already in jointly administered Chapter 15 proceedings before this Court.

12.    This is a core proceeding under 28 U.S.C. § 157(b)(2)(P), and the Court may enter a final order consistent with Article III of the United States Constitution.

13.    The statutory predicates for the relief requested herein are sections 105(a), 362, 1504, 1507, 1509, 1515, 1517, 1520, and 1521 of the Bankruptcy Code.

## FACTUAL BACKGROUND

14.    The Cayman Liquidation arose from the collapse of a set of investment funds promoted and managed by the Platinum group. *MacInnis Declaration* ¶ 16.  This Court has already recognized the Master Fund's and the International Fund's liquidations in the Cayman Islands as the foreign main proceedings of those entities.[4]  The Intermediate Fund is the third Cayman Islands entity in the PPVA Offshore Group. *Id.* ¶ 11.

15.    The Intermediate Fund is a Cayman Islands exempted company, incorporated on 9 April 2010 with registration number 239229. *Id.* ¶ 9.  Its registered office was previously located at Intertrust Corporate Services (Cayman) Limited, 190 Elgin Avenue, George Town, Grand Cayman KY1-9005, Cayman Islands. *Id.*  Upon the appointment of the Liquidators, the

---

[4] Further facts and details regarding the International Fund and the Master Fund can be found in the pleadings filed on the docket of *In re Platinum Partners Value Arbitrage Fund L.P.*, Bankr. S.D.N.Y. Case No. 16-12925 (SCC). filed *Verified Petition for Recognition of Foreign Insolvency Proceedings and Application for Additional Relief pursuant to Sections 1504, 1509, 1515, 1517, 1520, and 1521 of the Bankruptcy Code*, Docket No. 1, and the supporting *Declaration of Christopher Barnett Kennedy in support of Chapter 15 Petitions for Recognition as Foreign Main Proceedings*, Docket No. 2, in the above-captioned case, and are incorporated by reference herein.

location of the Intermediate Fund's registered office was changed to Borrelli Walsh, G/F Harbour Place, PO Box 30847, Grand Cayman, KY1-1204. *Id.*

16.     The Intermediate Fund was intended to serve as a flow-through, tax efficient blocker entity between the Master Fund and the International Fund. *Id.* ¶ 11. The International Fund operates as an investment fund, which invests all of its investable capital in the Intermediate Fund. *Id.* In turn, the Intermediate Fund invests all of its investable capital in, and serves as a limited partner of, the Master Fund. *Id.* The Master Fund invests and trades in U.S. and non-U.S. financial instruments and other funds, as well as in certain other assets and holding companies.[5] *Id.*

17.     The authorized share capital of the Intermediate Fund is US$50,000.00, divided into: (a) 100 Class M Shares of a nominal or par value of US$1.00 each, of which one share is issued and outstanding, registered in the name of the Platinum Partners Value Arbitrage, LP (the "Management Shareholder"); and (b) 4,990,000 Participating, Non-Voting Shares of a nominal or par value of US$0.01 each, of which the register of members shows no shares having been issued. *Id.* ¶ 13.

18.     The Management Shareholder is a Delaware limited partnership, and its general partner is Platinum Partners Value Arbitrage (GP) Corp., a Delaware corporation. *Id.* ¶¶ 13-14. The limited partners are stated to be Uri Landesman, Mark Nordlicht, and the Mark Nordlicht Grantor Trust. *Id.* ¶ 14. Mark Nordlicht is the sole director of the Management Shareholder. *Id.*

19.     Pursuant to a Fourth Amended and Restated Investment Management Agreement dated 9 March 2007 (amended and restated as of 27 April 2007, 1 July 2010, 1 September 2010 and 1 December 2010), Platinum Management (NY) LLC acted as the investment manager (the

---

[5] Further facts and details regarding the Master Fund or the International Fund's structure, assets, and liabilities, can also be found in the *Declaration of Christopher Barnett Kennedy in support of Chapter 15 Petitions for Recognition as Foreign Main Proceedings*, Docket No. 2.

"Investment Manager") for the Intermediate Fund. *Id.* ¶ 15. Separately, SS&C Technologies, Inc. serves as the administrator for the Intermediate Fund. *Id.*

20.     As the Court may be aware, various entities in the Platinum group and individuals associated with former management of the Platinum group are currently subject to criminal and regulatory proceedings in the United States. *Id.* ¶ 16. The United States Attorney's Office for the Eastern District of New York filed a criminal indictment on December 14, 2016 against Mr. Nordlicht and six other executives of the Platinum Group.[6] *Id.* To the best of the Liquidators' knowledge, Mr. Nordlicht is currently on release under the terms of a Release Order (as amended) approved by the District Court for the Eastern District of New York. *Id.* The United States Securities and Exchange Commission has also filed a civil complaint, dated December 19, 2016 against the Investment Manager and eight others, including Mr. Nordlicht and the other individuals subject to the criminal indictment.[7] *Id.* The SEC has obtained an order from the District Court for the Eastern District of New York appointing a third-party independent receiver over the assets of certain other Platinum Group entities associated with other funds managed by the Investment Manager. *Id.*

21.     Prior to the appointment of the Liquidators, control of the Intermediate Fund remained with Mr. Nordlicht. *Id.* ¶ 17. On February 6, 2017, the International Fund liquidators, as shareholders of the Intermediate Fund, petitioned the Grand Court to enter an order that the Intermediate Fund would be wound up ("Winding Up Petition").[8] *Id.* Among other arguments, the Winding Up Petition asserted the following: (a) the ability of the Investment Manager, the Management Shareholder, and the Intermediate Fund to be appropriately managed had been

---

[6] *United States v. Mark Nordlicht, et al.*, Criminal Docket No. 16-00640 (DLI) (E.D.N.Y.).
[7] *United States Securities and Exchange Commission et al v. Platinum Management (NY) LLC, et al.*, Civil Case No. 16-06848 (DLI) (VMS) (E.D.N.Y.).
[8] A copy of the Winding Up Petition is attached as Exhibit A to the *MacInnis Declaration* filed simultaneously herewith.

significantly impaired; (b) a formal insolvency process would allow court-appointed official liquidators to fully consider the affairs of the Intermediate Fund and ensure the efficient flow-through of any funds to be realized from the Master Fund for the benefit of the International Fund and its economic stakeholders; and (c) because the other entities in the Intermediate Fund's master/feeder structure (the Master Fund and the International Fund), are both in official liquidation, the Intermediate Fund necessarily is unable to continue its operations; there is no active business for the Intermediate Fund to undertake. *Id.*

22.     In response, the Grand Court entered an order on February 14, 2017 directing that the Intermediate Fund be wound up in accordance with the Companies Law, and appointing the Liquidators with immediate effect (the "Winding Up Order").[9] *Id.* ¶ 18.

## I.     The Cayman Liquidation and Cayman Islands Insolvency Law

23.     The substantive law relating to the winding up of companies incorporated in the Cayman Islands is contained in Part V of the Companies Law. *Lambert Declaration* ¶ 14. The provisions of Part V apply to companies formed and registered under the Companies Law or its predecessors, including companies that are formed as exempted companies. *Id.*

24.     The statutory provisions governing the liquidation of Cayman Islands companies are set out in Part V of the Companies Law, which is supplemented by the Companies Winding Up Rules 2008 (as revised, including the 2013 amended rules) ("CWR"), the Insolvency Practitioners Regulations 2008 (as revised) (the "IPR") the Foreign Bankruptcy Proceedings (International Cooperation) Rules, 2008 (as revised) and the Grand Court Rules 1995 (as revised) (the "GCR"). *Id.*

---

[9] A copy of the Winding Up Order has been attached as Exhibit B to the *MacInnis Declaration* filed simultaneously herewith.

25.    A Cayman Islands company may be wound up: (a) voluntarily, following the passing of a special resolution of its shareholder(s) or pursuant to a mandatory term in its constitutional documents; (b) compulsorily, by order of the Grand Court; or (c) under the supervision of the Grand Court. *Id.* ¶ 15.

26.    The Companies Law provides that a Cayman Islands company may be placed into liquidation if the Court finds there is a *prima facie* case for making a winding up order, and the appointment of liquidators is necessary to prevent the dissipation or misuse of the company's assets, to prevent the oppression of minority shareholders, or to prevent the mismanagement or misconduct on the part of the company's directors. *Id.* ¶ 17.

27.    The Intermediate Fund was placed into liquidation under the supervision of the Grand Court due to the collapse of the investment business of the master/feeder structure of which it is a part. *Id.* ¶ 19. The Intermediate Fund was intended to operate as a flow-through block entity in the Platinum Group, inserted in the corporate structure between the International Fund and the Master Fund. *MacInnis Declaration* ¶ 11. As the International Fund and Master Fund were both placed into liquidation, the Intermediate Fund's existence outside of liquidation became an impediment to the administration of the Master Fund's and the International Fund's liquidation proceedings. *Id.* ¶ 17. Entering insolvency would allow the liquidators of the International Fund and Master Fund to ensure efficient funds flow through the PPVA Offshore Group for the benefit of the Funds' creditors and other economic stakeholders. *Id.*

28.    The Liquidators are fiduciaries and officers of the Grand Court. As Official Liquidators of the Intermediate Fund, their duties are to (a) collect, realize and distribute the assets of the Intermediate Fund to its stakeholders, and (b) report to the Intermediate Fund's

stakeholders upon the affairs of the Intermediate Fund and the manner in which it is being wound up. *Lambert Declaration* ¶ 22.

29.    Schedule 3, Part II of the Companies Law provides that the Official Liquidators are permitted to exercise the following powers without the Grand Court's approval:

a.    "The power to take possession of collect and enter the property of the company and for that purpose to take all such proceedings as he considers necessary.

b.    The power to do all acts and execute, in the name and on behalf of the company, all deeds, receipts and other documents and for that purpose to use, when necessary, the company seal.

c.    The power to prove, rank and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against his estate, and to receive dividends in the bankruptcy, insolvency or sequestration in respect of that balance, as a separate debt due from the bankrupt or insolvent and rateably with the other separate creditors.

d.    The power to draw, accept, make and indorse any bill of exchange or promissory note in the name and on behalf of the company, with the same effect with the respect of the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.

e.    The power to promote a scheme of arrangement pursuant to section 86.

f.    The power to convene meetings of creditors and contributories.

g.    The power to do all other things incidental to the exercise of his powers."

*Id.* ¶ 23.

30.    Cayman Islands liquidation proceedings are typically regarded as fair and equitable. *Id.* ¶ 20. *See, e.g., In re Nat'l Warranty Ins. Risk Retention Grp.*, 306 B.R. 614, 621 (B.A.P. 8th Cir.), *aff'd*, 384 F.3d 959 (8th Cir. 2004). All interest holders have an opportunity to be heard by the Cayman Court and no party will likely be prejudiced due to the proceeding being held in a foreign jurisdiction. *Lambert Declaration,* ¶ 20. In addition, a general principle

underlying the Cayman Islands' insolvency regime is that the claims of investors and creditors

within the same classes are treated on a *pari passu* basis. *Id.*

31.    Section 97(1) of the Companies Law provides that upon the entry of a winding up

order, no suit or other proceeding may be commenced or continued against the company except

with leave of the Grand Court and subject to such terms as that Court might impose. *Id.* ¶ 21.

This automatic stay mirrors the stay imposed in U.S. bankruptcy proceedings and serves to

promote the Liquidators' ability to deal with the winding up process collectively and

comprehensively across the PPVA Offshore Group.

## II.    The Intermediate Fund's Activities in the Cayman Islands

32.    As noted above, the Intermediate Fund was formed as an exempted limited

company under the laws of the Cayman Islands and maintained its registered office in the

Cayman Islands. *MacInnis Declaration* ¶ 9.

33.    An "exempted" company under the Companies Law is prohibited from

undertaking business in the Cayman Islands except in furtherance of its business carried on

outside the Cayman Islands. *Lambert Declaration* ¶ 30. Specifically, it may effect and conclude

contracts in the Cayman Islands and exercise in the Cayman Islands all of its powers necessary

for the carrying on of its business outside the Cayman Islands, meaning that it may employ staff

or agents in the Cayman Islands and have offices in the Cayman Islands in furtherance of its

business outside the Cayman Islands, all of which the Intermediate Fund has always done. *Id.*

34.    Despite that the Intermediate Fund was restricted from carrying on business

within the Cayman Islands upon its incorporation, this did not mean that the Intermediate Fund

had no presence at all in the Cayman Islands. *Id.* ¶ 31. The registered office of the Intermediate

Fund has been situated in the Cayman Islands since its inception. *Id.; MacInnis Declaration* ¶ 9.

The registered office of the Intermediate Fund was previously located at Intertrust Corporate

Services (Cayman) Limited, 190 Elgin Avenue, George Town, Grand Cayman KY1-9005, Cayman Islands, where the Intermediate Fund submitted its annual filings to the Registrar of Companies. *MacInnis Declaration* ¶ 9. Upon the appointment of the Liquidators, the location of the Intermediate Fund's registered office was changed to Borrelli Walsh, G/F Harbour Place, PO Box 30847, Grand Cayman, KY1-1204. *Id.* Additionally, prior to the Cayman Liquidation, the independent directors of the Intermediate Fund were based in the Cayman Islands, and the audit of the International Fund and the Intermediate Fund were carried out in, and issued by auditors in, the Cayman Islands. *Id.* ¶ 26.

35.    Under private international law, shares are deemed to be situated in the country where they can be effectively dealt with between the shareholder and that company. *Lambert Declaration* ¶ 32. By virtue of the fact that the register of members of the Intermediate Fund is maintained at its respective registered office, any issues relating to the title of those shares will be governed by the laws of the Cayman Islands. *Id.*

36.    The restriction on the carrying on of an "exempted" company's business inside the Cayman Islands, however, no longer applies after a company commences liquidation in the Cayman Islands. *Id.* ¶ 33.

37.    Since their appointment, the Liquidators have been directly involved in all facets of the ongoing Liquidation, including working with the liquidators of the Master Fund and the International Fund to coordinate the winding down of the Funds as a group. *MacInnis Declaration* ¶ 20. All relevant parties are participating in the Cayman Islands liquidations, or have looked to the applicable liquidators for resolution, objection or instruction on issues concerning the Funds. *Id.* These parties include, but are not limited to, the Securities and Exchange Commission, former management entities, direct counterparties, management of the

related Platinum group entities, and the Funds' numerous creditors and investors. *Id.* In addition

to phone and email correspondence, the Liquidators, as well as the liquidators of the Master

Fund and International Fund, have personally met with dozens of the Funds' major creditors and

investors either directly or by their United States or Cayman Islands counsel. *Id.*

38.    Not only is the management of the Intermediate Fund being conducted by the

Liquidators from within the Cayman Islands, but the key aspects of the Intermediate Fund's

management are subject to the orders and jurisdiction of the Grand Court. *Lambert Declaration*

¶ 34.

## RELIEF SOUGHT

39.    By this Verified Petition, the Liquidators seek the following relief:

- Recognition of the Cayman Liquidation as the foreign main proceeding under sections 1515 and 1517 of the Bankruptcy Code;

- Recognition of the Petitioners as the Intermediate Fund's foreign representatives under sections 1509 and 1512 of the Bankruptcy Code; and

- Relief pursuant to sections 1520 and 1521 of the Bankruptcy Code.

## BASIS FOR RECOGNITION

40.    Section 1517 of the Bankruptcy Code mandates entry of an order recognizing a

"foreign proceeding" if it appears that recognition will not undermine U.S. public policy and:

"(1) such foreign proceeding for which recognition is sought is a foreign main proceeding or

foreign non-main proceeding within the meaning of section 1502; (2) the foreign representative

applying for recognition is a person or body; and (3) the petition meets the requirements of

section 1515." 11 U.S.C. § 1517(a).

41.    Each of those requirements is met here, and entry of an order substantially in the

form attached hereto as **Exhibit A** will significantly aid the Liquidators' efforts to administer the

Intermediate Fund and the winding up process of the whole PPVA Offshore Group.

## I.      The Cayman Liquidation is a Foreign Proceeding, and the Liquidators are the Foreign Representatives.

42.      Section 101(23) of the Bankruptcy Code defines a foreign proceeding as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). The Bankruptcy Code defines the term "foreign representative" as "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24). The Liquidators and the Cayman Liquidation satisfy each of these requirements.

43.      First, the Cayman Liquidations are judicial proceedings in a foreign country, the Cayman Islands, subject to the control and supervision of the Grand Court. *Lambert Declaration* ¶¶ 25, 27. Relevant stakeholders have a right to access the Grand Court and may appeal decisions of the Liquidators. *Id.* ¶ 12.

44.      Second, the Cayman Liquidation is being conducted by the Liquidators, who were appointed by the Grand Court pursuant to the Companies Law as joint liquidators to oversee and manage the winding up of the Intermediate Fund according to the provisions of the Companies Law. *Id.* ¶¶ 9, 27. As such, each of the Liquidators is a "person authorized in a foreign proceeding to administer the reorganization or the liquidation of [the Intermediate Fund's] assets or affairs," within the meaning of section 101(24).

45.      Third, the relevant portions of the Companies Law and related rules that govern the Cayman Liquidation specifically relate to proceedings in the Cayman Islands concerning "insolvency or adjustment of debt." 11 U.S.C. § 101(23); *Lambert Declaration* ¶ 25.

46.    Finally, the Cayman Liquidation is a "collective ... proceeding[s]" because it "considers the rights and obligations of all creditors." *See, e.g., In re Ashapura Minechem Ltd.*, No. 11-14668 (JMP) (Bankr. S.D.N.Y. Nov. 22, 2011) [Docket No. 34] (quoting *In re Betcorp Ltd.*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009)); *In re Gold & Honey, Ltd.*, 410 B.R. 357, 370 (Bankr. E.D.N.Y. 2009) (citations omitted).    Pursuant to the Winding Up Order and the Companies Law, the Cayman Liquidation and the Liquidators' management of the Intermediate Fund's affairs are subject to the supervision and control of the Grand Court.    *Lambert Declaration* ¶ 34.  The Liquidators have also been working with the liquidators of the Master Fund and the International Fund, with the objective of winding up the PPVA Offshore Group in a coordinated, efficient manner for the benefit of the investors and creditors.    *MacInnis Declaration* ¶ 20.

47.    As discussed above, in addition to the Chapter 15 proceedings of the Master Fund and the International Fund, numerous courts in this and other districts have found that official liquidation proceedings brought pursuant to the Companies Law qualify as a "foreign proceeding," and that joint liquidators appointed and overseen by the Grand Court qualify as "foreign representatives" for purposes of section 101(23) and (24).  *In re Platinum Partners Arbitrage Fund L.P.,* Case No. 16-12925 (SCC).  *See, e.g., In re LDK Solar Co., Ltd.*, No. 14-12387 (PJW) (Bankr. D. Del. Nov. 21, 2014) [Docket No. 43] (recognizing Cayman Islands liquidation as foreign main proceeding); *In re Saad Invs. Fin. Co. (No. 5) Ltd.*, No. 09-13985 (KG) (Bankr. D. Del. Dec. 17, 2009) [Docket No. 47] (same); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399 (Bankr. S.D.N.Y. 2014); *In re Millard*, 501 B.R. 644, 647 (Bankr. S.D.N.Y. 2013) (individual bankruptcies before Cayman Grand Court); *In re AJW Offshore Ltd.*, Case No. 13-70078, (Bankr. E.D.N.Y. Feb. 5, 2013) [Docket No. 31].

48.    For the foregoing reasons, the Cayman Liquidation is a "foreign proceeding" within the meaning of section 1517(a)(1) of the Bankruptcy Code.

## II.    The Cayman Liquidation is the Foreign Main Proceeding.

49.    The Cayman Liquidation is the "foreign main proceeding" with respect to the Intermediate Fund within the meaning of section 1502(4) of the Bankruptcy Code, because the Intermediate Fund's COMI is in the Cayman Islands. *MacInnis Declaration* ¶¶ 25-29.  The Bankruptcy Code defines a "foreign main proceeding" as "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4).  A foreign proceeding "shall be recognized" as a foreign main proceeding if it is pending where the debtor has its COMI. *See* 11 U.S.C. § 1517(b)(1).

50.    Although the Bankruptcy Code does not define "center of main interests," pursuant to section 1516(c) of the Bankruptcy Code, in the absence of evidence to the contrary, the debtor's registered office, which in this case is the Cayman Islands, is presumed to be its COMI.  11 U.S.C. §1516(c).  *See also In re ABC Learning Centres Ltd.*, 445 B.R. 318, 333 (Bankr. D. Del. 2010) (holding that debtor's registered jurisdiction was its COMI where debtor established the section 1516 presumption, and no evidence was presented rebutting that presumption).

51.    Here, the registered office of the Intermediate Fund is in the Cayman Islands, and has been since its formation. *MacInnis Declaration* ¶ 9.

52.    In any case, a foreign debtor's COMI is determined at the time the Chapter 15 petition is filed. *In re Fairfield Sentry Ltd.*, 714 F.3d 127, 137 (2d Cir. 2013) ("[A] debtor's COMI should be determined based on its activities at or around the time the Chapter 15 petition is filed, as the statutory text suggests.").  Where, as here, a debtor has engaged in restructuring

17

efforts and related activities prior to the filing of the Chapter 15 petition, courts will consider such activities in the determination of the debtor's COMI. *Fairfield Sentry Ltd.*, 714 F.3d at 137. *See In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399 (Bankr. S.D.N.Y. 2014) (commencement of provisional Cayman proceedings, together with subsequent activities of liquidators had the effect of transferring holding company's COMI to Cayman)

53.    On this basis, numerous similar offshore funds and structures have been recognized by courts in various jurisdictions as foreign main proceedings pursuant to Chapter 15. *See, e.g., In re Niton Fund SPC*, 15-13252 (SMB) (Bankr. S.D.N.Y.) [Docket No. 7]; *In re Madison Niche Assets Fund, Ltd., et. al.*, 16-10043 (KJC) (Bankr. D. Del. March 1, 2016) [Docket No. 35]; *In re Richcourt Euro Strategies Inc., et. al*, 15-12273 (REG) (Bankr. S.D.N.Y) [Docket No. 13]; *In re Tranen Capital Alternative Investment Fund Ltd.*, No. 15-12620 (Bankr. S.D.N.Y. Oct. 29, 2015) [Docket No. 14] (recognizing liquidation of British Virgin Island Fund structure as a foreign main proceeding); *In re Lawndale Group S.A.*, No. 15-11352 (SCC) (Bankr. S.D.N.Y. July 6, 2015) [Docket No. 3] (recognizing liquidation of British Virgin Islands entity as foreign main proceeding); *In re Pioneer Freight Futures*, No. 13-12324 (Bankr. S.D.N.Y. Aug. 23, 2013) [Docket No. 14] (same); *In re Farenco Shipping Co. Ltd.*, No. 11-14138 (REG) (Bankr. S.D.N.Y Feb. 24, 2012) [Docket No. 18] (same); *see also In re British American Isle of Venice (BVI), Ltd.*, 441 B.R. 713 (Bankr. S.D. Fla. 2010) (recognition of offshore funds as foreign main proceedings); *In re Grand Prix Assocs., Inc.*, No. 09-16545 (DHS), (Bankr. D.N.J. May 18, 2009) [Docket No. 83] (same); *In re Saad Invs. Fin. Co. (No. 5) Ltd.*, No. 09-13985 (KG) (Bankr. D. Del. Dec. 17, 2009) [Docket No. 47] (Cayman fund).

54.    In addition to the presumption provided under section 1516, courts consider any relevant factors, including: (i) the location of the debtor's assets; (ii) the location of the debtor's

18

books and records; (iii) the location of the majority of the debtor's creditors; (iv) the commercial

expectations and knowledge of the debtor's creditors; and (v) the location of those who actually

manage the debtor. *See, e.g., In re Suntech Power Holdings Co., Ltd.*, 520 B.R. at 416; *In re

Grand Prix Assocs.*, No. 09-16545, 2009 WL 1410519, at *22 (Bankr. D.N.J. May 18, 2009).

These factors, however, are not dispositive or exclusive, and none of the factors are required.

*See In re Fairfield Sentry Ltd.*, 714 F.3d at 137-38.    Courts have also looked to whether a

Chapter 15 debtor's COMI would have been readily ascertainable to parties in interest. *See

Grand Prix Assocs.*, 2009 WL 1410519, at *6.

55.    Applying the foregoing factors to this case, there is no doubt that the Intermediate

Fund's COMI is the Cayman Islands.  The Liquidators are operating and overseeing the winding

up and liquidation of the Intermediate Fund, including working with the liquidators of the Master

Fund and International Fund to ensure a proper winding-up of the entire PPVA Offshore Group,

as discussed above. *MacInnis Declaration* ¶ 20.  Based on the documentation issued both by

and to the Intermediate Fund, it is clear that all relevant stakeholders and shareholders regarded

the Intermediate Fund as a Cayman Islands company and that all relevant persons, entities,

investors, creditors and counter-parties regard the Cayman Islands to be the "nerve center" of the

Intermediate Fund. *Id.* ¶¶ 20, 27.

56.    The *Suntech* opinion issued by this Court is instructive.  In *Suntech*, the Court

held that the activities of a Cayman provisional liquidator were sufficient to establish the

Cayman Islands as the debtor's COMI, even though the debtor's principal place of business prior

to foreign liquidation was in China. *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. at 419.  A

primary factor in this Court's COMI analysis for *Suntech* was the provisional liquidator's active

involvement in managing the debtor fund's subsidiaries as of the Petition Date.  As set forth

above, the Liquidators have been working constructively with the liquidators of the Master Fund and the International Fund, the latter of which Ms. MacInnis also serves as liquidator, to effectuate the winding up process for the PPVA Offshore Group, and most, if not all, of those activities are directed from the Cayman Islands. *MacInnis Declaration* ¶¶ 1, 28. The Liquidators in this case have absolute management control over the Intermediate Fund subject to the supervision of the Grand Court. *Id.* ¶ 28; *Lambert Declaration* ¶ 34.

57.     As set forth in detail above, as well as in the accompanying *MacInnis Declaration*, it is respectfully submitted that the nexus between the Cayman Islands and the Intermediate Fund matches, or even exceeds, what this Court and other Courts have previously found sufficient to establish COMI.

58.     Under the circumstances, the Liquidators submit that there is ample evidence and precedent to support recognition of the Cayman Liquidation as the foreign main proceeding.

### III.     The Cayman Liquidation Meets All Other Requirements for Recognition.

59.     In addition to being the foreign main proceeding brought by duly appointed foreign representatives, the Cayman Liquidation meets all other requirements for recognition under section 1515 of the Bankruptcy Code. The Petition is accompanied by a certified copy of the Winding Up Order issued by the Grand Court, which evidences the commencement of the Cayman Liquidation and the appointment of the Liquidators as joint official liquidators of the Intermediate Fund. *See* 11 U.S.C. §§ 1515(b). The Petition also is accompanied by a declaration that contains a statement that there are no other foreign proceedings with respect to the Intermediate Fund known to the Liquidators. *See* 11 U.S.C. §§ 1515(c).

60.     The Petition likewise is accompanied by a declaration containing the information required by Bankruptcy Rule 1007, including the disclosures required by Bankruptcy Rule 7007.1, a statement indicating that there are no other persons or entities known to the Liquidators

20

that are authorized to administer foreign proceedings with respect to the Intermediate Fund, and a statement indicating that the Intermediate Fund is not currently engaged in any active litigation in the United States. All documents supporting the Petition are in English. *See* 11 U.S.C. § 1515(d).

61.    For all of these reasons, this Court can and should find that all of the requirements for recognition of the Cayman Liquidation as the foreign main proceeding under Chapter 15 have been satisfied.

## CONCLUSION

WHEREFORE, the Liquidators respectfully request that this Court enter an Order, substantially in the form of **Exhibit A** to this Petition, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: August 17, 2017
New York, New York

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Joshua Dorchak*
Joshua Dorchak
Matthew C. Ziegler
Melissa Y. Boey
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6700
Facsimile: (212) 309-6000

- and -

John C. Goodchild, III
1701 Market Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 963-5020
Facsimile: (215) 963-5001

*Counsel to Margot MacInnis and Cosimo Borrelli, as Joint Official Liquidators of Platinum Intermediate Fund*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, Margot MacInnis declares as follows:

My colleague Cosimo Borrelli and I are the duly appointed joint official Liquidators (the "Liquidators") of Platinum Partners Value Arbitrage Intermediate Fund Ltd. (in Official Liquidation) (the "Intermediate Fund"). I also serve as the duly appointed joint official liquidator and foreign representative of Platinum Partners Value Arbitrage Fund (International) Ltd. (in Official Liquidation) (the "International Fund"), along with my colleague Nilani Perera. The Intermediate Fund and the International Fund, along with Platinum Partners Arbitrage Fund L.P. (in Official Liquidation) (the "Master Fund") (collectively, the "Funds") are in liquidation pursuant to the orders[10] of the Financial Services Division of the Grand Court of the Cayman Islands (the "Grand Court"). The orders were issued pursuant to section 92, *inter alia,* of the Companies Law, of the Cayman Islands (2016 Revision) (the "Companies Law"). I have full authority to verify the foregoing *Verified Petition for Recognition of Foreign Insolvency Proceeding and Application for Additional Relief Pursuant to Sections 1504, 1509, 1515, 1517, 1520 and 1521 of the Bankruptcy Code* (the "Verified Petition"). I have read the Verified Petition, am informed as to its contents, and believe that the allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

---

[10] The orders are referenced as Cause Nos. FSD 131 of 2016 (AJJ) (Master Fund); FSD 118 of 2016 (AJJ) (International Fund); and FSD 30 of 2017 (AJJ) (Intermediate Fund).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this ll day of Augvst , 2017 in Grand Cayman, Cayman Islands.

**MARGOT MACINNIS**

*Joint Official Liquidator of Platinum Partners Value Arbitrage Intermediate Fund Ltd. (in Official Liquidation), and*
*Joint Official Liquidator of Platinum Partners Value Arbitrage Fund (International) Ltd. (in Official Liquidation)*