MORGAN, LEWIS & BOCKIUS LLP

Joshua Dorchak
Matthew C. Ziegler
Melissa Y. Boey
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6700
Facsimile: (212) 309-6000

- and -

John C. Goodchild, III
1701 Market Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 963-5020
Facsimile: (215) 963-5001

*Counsel to Margot MacInnis and Cosimo Borrelli, as
Joint Official Liquidators of Platinum Intermediate Fund*

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

In re:

PLATINUM PARTNERS VALUE
ARBITRAGE INTERMEDIATE FUND LTD.
(IN OFFICIAL LIQUIDATION),[1]

          Debtors in
          Foreign Proceedings.

---------------------------------------------------------------X

Chapter 15

Case No. 17-_____ (___)

(Joint Administration Requested)

**DECLARATION OF IAN LAMBERT IN SUPPORT OF THE CHAPTER 15
PETITION FOR RECOGNITION AS FOREIGN MAIN PROCEEDING**

---

[1] The last four digits of the debtor's United States Tax Identification Number, or similar foreign identification number, is 9530.

I, **IAN LAMBERT**, hereby declare under penalty of perjury under the laws of the United States as follows:

## INTRODUCTION

1.  I am a partner at HSM, a law firm located in the Cayman Islands specializing in Cayman Islands insolvency, commercial litigation, immigration, and employment law. We advise financial, institutional and business clients worldwide. I am an admitted attorney-at-law of, *inter alia*, the Cayman Islands and, consequently, I regularly advise clients on the laws of the Cayman Islands.

2.  My practice in the Cayman Islands primarily focuses on insolvency, corporate recovery, corporate fraud, and commercial litigation. Prior to working at HSM, I was employed by the law firms of Bodden & Bodden in the Cayman Islands, where I gained a strong understanding and knowledge of Cayman Islands litigation and insolvency matters, as well as Zarek Taylor Grossman Hanrahan LLP in Toronto, Canada, and Brown Beattie O'Donovan LLP in London, Canada, where I gained extensive litigation, mediation, and arbitration experience.

3.  In 2002, I was awarded a Bachelor of Laws from the University of Windsor. I was called to the Ontario, Canada bar in 2003, and subsequently practiced as an barrister and solicitor in Canada. I have been admitted as an attorney-at-law in the Cayman Islands since August 2009. I regularly appear before the Grand Court of the Cayman Islands on a variety of litigation and liquidation matters.

4.  I act as Cayman Islands legal counsel to Margot MacInnis and Cosimo Borrelli (the "Liquidators" or "Petitioners"), in connection with their appointment on February 14, 2017 by the Financial Services Division of the Grand Court of the Cayman Islands (the "Grand Court") as the Joint Official Liquidators of Platinum Partners Value Arbitrage Intermediate Fund Ltd. (in Official Liquidation) (the "Intermediate Fund").

2

5. Although I am not a U.S. attorney and therefore do not purport to make any authoritative statements concerning matters of U.S. law, I am well acquainted with Chapter 15 of the United States Bankruptcy Code ("Chapter 15") due to my experience advising clients on complex cross-border corporate restructurings and insolvencies.

6. I make this declaration in support of the chapter 15 petition filed contemporaneously herewith (the "Petition") seeking the U.S. Bankruptcy Court's recognition of (i) the liquidation of the Intermediate Fund in the Cayman Islands (the "Cayman Liquidation") as the "foreign main proceeding" pursuant to 11 U.S.C. § 1517(b)(1) and (ii) the Petitioners as "foreign representatives" of the Intermediate Fund pursuant to 11 U.S.C. § 101(24) (the "Petition").

7. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal experience and knowledge and my review of relevant documents, which include the declaration of Margot MacInnis filed simultaneously herewith (the "MacInnis Declaration"). To the extent that statements in this declaration are of my own legal opinion, they represent my views and understanding of the laws of the Cayman Islands as a practicing Cayman Islands attorney.

8. For the reasons set out herein and on the basis of the advice that I have received from U.S. counsel: (a) the Liquidators qualify as "foreign representatives" of the Intermediate Fund in accordance with my understanding of 11 U.S.C. § 101(24); (b) the Cayman Liquidation constitutes a "foreign proceeding" in accordance with my understanding of 11 U.S.C. § 101(23); and (c) the Cayman Liquidation constitutes a "foreign main proceeding" within my understanding of the meaning of Sections 1502(4) and 1517(b)(1) of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

9. Since their appointment on February 14, 2017, the Liquidators have been empowered by the Grand Court to exercise certain powers and functions as set forth in the Order through which they were appointed (the "Winding Up Order").[2] The Liquidators are also statutorily empowered to exercise certain powers as set forth in Part II of the Third Schedule to the Companies Law. True and correct copies of the relevant sections of the Companies Law are attached hereto as **Exhibit A**.

10. I have been asked by the Petitioners to explain the relevant substantive Cayman Islands law and procedural rules considered to be relevant to the liquidation and dissolution of Cayman Islands companies and, more particularly, the Intermediate Fund.

### Sources of Law of the Cayman Islands

11. The Cayman Islands is a British Overseas Territory and, as such, its laws are derived from: (a) original local statutes enacted by the local general legislative assembly; (b) English common law brought to the Cayman Islands by early settlers, as adapted to local circumstances and subsequently developed and applied by the courts of the Cayman Islands; (c) statutes of England and Wales in existence at the time of settlement, as subsequently applied, amended, repealed and replaced by statutes and subsidiary legislation enacted in and applicable to the Cayman Islands; (d) Orders in Council made by prerogative Order of the British Sovereign and made specifically applicable to the Cayman Islands; and (e) statutes of the United Kingdom Parliament that have been expressly extended to apply to the Cayman Islands.

12. Where no specific local statutory provision applies, the courts of the Cayman Islands will apply English common law as adapted to the circumstances of the Cayman Islands. On questions governed by the common law, the doctrine of judicial precedent applies. The court

---

[2] A copy of the Winding Up Order is annexed as Exhibit B to the *Declaration of Margot MacInnis in support of Chapter 15 Petition for Recognition as Foreign Main Proceeding* filed simultaneously herewith.

of first instance is the Grand Court which will, as a matter of judicial comity, follow its own previous decisions unless they are shown to be wrong.[3] There is a right of appeal from the Grand Court to the Cayman Islands Court of Appeal. The final appellate court for the Cayman Islands is the Judicial Committee of the Privy Council (the "<u>Privy Council</u>") which sits in London and which is composed of members of the Supreme Court of the United Kingdom (the highest court in the United Kingdom, formerly known as the Judicial Committee of the House of Lords). The Grand Court is bound by decisions of the Cayman Islands Court of Appeal and by decisions of the Privy Council on appeals originating from the Cayman Islands.

13. There is an increasing body of jurisprudence in the Cayman Islands developed mainly over the last 40 years and reported in the Cayman Islands Law Reports. Notwithstanding that, it still regularly transpires that there is no local Cayman Islands authority on a particular issue. Where there is no Cayman Islands authority on a particular issue, the Cayman Islands courts will look to and apply decisions of the English courts and, less frequently, decisions of the courts of other Commonwealth jurisdictions. Decisions of the English Court of Appeal and Supreme Court are regarded as highly persuasive, as well as decisions of the Privy Council on appeals originating from other Overseas Territories and Commonwealth jurisdictions. The decisions of the highest courts of other developed Commonwealth jurisdictions, such as Australia, New Zealand, Canada, and Hong Kong may also have persuasive effect on the decisions of the Grand Court, depending on their subject matter.

## Liquidation of Cayman Islands Companies

14. The statutory provisions governing the liquidation of Cayman Islands companies are set out in Part V of the Companies Law, which is supplemented by the Companies Winding Up Rules 2008 (as revised, including the 2013 amended rules) ("<u>CWR</u>"), the Insolvency

---

[3] Re Bank of Credit & Commerce International, CILR 56 [1994-95].

Practitioners Regulations 2008 (as revised) (the "IPR"), the Foreign Bankruptcy Proceedings (International Cooperation) Rules 2008 (as revised), and the Grand Court Rules 1995 (as revised) (the "GCR"). These provisions apply to companies formed and registered under the Companies Law or its predecessors, including companies that are formed as exempted companies.

15.    A Cayman Islands company may be wound up: (a) voluntarily, following the passing of a special resolution of its shareholder(s)[4] or pursuant to a mandatory term in its constitutional documents[5]; (b) compulsorily, by order of the Grand Court;[6] or (c) under the supervision of the Grand Court.[7]

### Liquidation by the Grand Court

16.    The supervised liquidation of a Cayman Islands company is carried out by the Grand Court, pursuant to certain statutory mechanisms set out in the Companies Law. A Cayman Islands company may be wound up by the Grand Court where (a) the company has passed a special resolution requiring the company to be wound up by the Court, (b) the company has not commenced business within a year from its incorporation, or suspends its business for a whole year, (c) the period, if any, fixed for the duration of the company by the articles of association expires, or whenever the event, if any, occurs, upon the occurrence of which it is provided by the articles of association with the company is to be wound up, (d) the company is unable to pay its debts, or (e) the court is of the opinion that it is just and equitable that the company be wound up.[8]

17.    The Companies Law provides that a Cayman Islands company may also be placed into liquidation upon the application of a creditor or contributory of the company (or in the case

---

[4] Section 90(b)(i) of the Companies Law.
[5] Section 90(b)(ii) of the Companies Law.
[6] Section 90(a) of the Companies Law.
[7] Section 90(c) of the Companies Law.
[8] Section 92 of the Companies Law.

of a regulated business, the Cayman Islands Monetary Authority). The Court must find that there is a *prima facie* case for making a winding up order; the appointment of provisional liquidators must be necessary to prevent the dissipation or misuse of the company's assets, to prevent the oppression of minority shareholders, or to prevent the mismanagement or misconduct on the part of the company's directors.[9]

18. In addition, an application for the appointment of a provisional liquidator can be made *ex-parte* where the company is or is likely to become unable to pay its debts and the company intends to present a compromise or arrangement to its creditors.[10]

19. In the case of the Intermediate Fund, it was placed into liquidation due to the collapse of the investment business of the master/feeder structure of which it is a part. The Intermediate Fund was intended to operate as a flow-through block entity in the Platinum Group, inserted in the corporate structure between Platinum Partners Value Arbitrage Fund (International) Ltd. (in Official Liquidation) (the "International Fund") and Platinum Partners Value Arbitrage Fund L.P. (in Official Liquidation) (the "Master Fund") (collectively, all three funds are referred to herein as the "Funds"). As the International Fund and Master Fund, structured above and below the Intermediate Fund, were both placed into liquidation, the Intermediate Fund necessarily was unable to continue its operations. Entering formal insolvency proceedings would allow the liquidators of the three Funds to ensure efficient funds flow and consolidation of potential litigation claims through the group structure, for the benefit of the Funds' creditors and other economic stakeholders.

20. In my experience, Cayman Islands liquidation proceedings are fair and equitable. All interest holders have an opportunity to be heard by the Cayman Court and no party will be

---

[9] Section 104(2) of the Companies Law.
[10] Section 104(3) of the Companies Law.

prejudiced due to the proceeding being held in a foreign jurisdiction. In addition, a general principle underlying the Cayman Islands' insolvency regime is that the claims of investors and creditors within the same classes are treated on a *pari passu* basis.[11]

21.  Section 97(1) of the Companies Law provides that upon the entry of a winding up order or the appointment of a liquidator, no suit or other proceeding may be commenced or continued against the company except with leave of the Grand Court and subject to such terms as the Grand Court may impose. This automatic stay serves to promote the Liquidators' ability to deal with the winding up of the entity in a collective and comprehensive manner.

### The Liquidators

22.  The Liquidators are fiduciaries and officers of the Grand Court. As Official Liquidators of the Intermediate Fund, their duties are to (a) collect, realize and distribute the assets of the Intermediate Fund to its creditors and then to its equity holders, and (b) report to the Intermediate Fund's stakeholders upon the affairs of the Intermediate Fund and the manner in which it is being wound up.[12]

23.  Schedule 3, Part II of the Companies Law provides that the Official Liquidators are permitted to exercise the following powers without the Grand Court's approval:

   a.  "The power to take possession of collect and enter the property of the company and for that purpose to take all such proceedings as he considers necessary.

   b.  The power to do all acts and execute, in the name and on behalf of the company, all deeds, receipts and other documents and for that purpose to use, when necessary, the company seal.

   c.  The power to prove, rank and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against his estate, and to receive dividends in the bankruptcy, insolvency or sequestration in respect

---

[11] Section 140 of the Companies Law.
[12] Section 110 of the Companies Law.

of that balance, as a separate debt due from the bankrupt or insolvent and rateably with the other separate creditors.

d. The power to draw, accept, make and indorse any bill of exchange or promissory note in the name and on behalf of the company, with the same effect with the respect of the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.

e. The power to promote a scheme of arrangement pursuant to section 86.

f. The power to convene meetings of creditors and contributories.

g. The power to do all other things incidental to the exercise of his powers."

### The U.S. Bankruptcy Code

A.  *The liquidation of the Intermediate Fund in the Cayman Islands is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code*

24. I am advised by U.S. Counsel that "foreign proceeding" is defined in section 101(23) of the Bankruptcy Code as:

> "... *a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the Debtors are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.*"

11 U.S.C. § 101(23).

25. In my view, the Cayman Liquidation satisfies this definition: the collective liquidation process of the Intermediate Fund was commenced pursuant to Part V of the Companies Law, pursuant to Liquidation Orders entered into by the Grand Court of the Cayman Islands.

B.  *The Petitioners are "foreign representatives" within the meaning of section 101(24) of the Bankruptcy Code*

26. I am also advised by U.S. Counsel that "foreign representative" is defined in section 101(24) of the Bankruptcy Code as:

*... a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."*

11 U.S.C. § 101(24).

27. In my view, the Petitioners satisfy this definition: as fiduciaries and officers of the Grand Court, the Liquidators are duly authorized and empowered by the Grand Court to administer the liquidation of the Intermediate Fund's assets and to act as the duly authorized representatives of the Intermediate Fund.

28. Separately, it is a requirement of the IPR that at least one official liquidator be resident in the Cayman Islands. In the case of the Intermediate Fund, this condition has been satisfied.

C. *The liquidation of the Intermediate Fund in the Cayman Islands is the "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code*

29. I am also advised by U.S. Counsel that a "foreign main proceeding" is defined as "a foreign proceeding pending in the country where the debtor has the center of its main interests," and that an entity's center of main interests will turn on various factors, such as (i) the location of the debtor's registered office; (ii) the location of the debtor's assets; (iii) the location of the debtor's books and records; (iv) the location of the majority of the debtor's creditors; (v) the commercial expectations and knowledge of the debtor's creditors; and (vi) the location of those who actually manage the debtor, in each case, at the time the Petition is filed.

30. The Intermediate Fund was established as a Cayman Islands exempted limited company. An exempted entity is prohibited from undertaking business in the Cayman Islands except in furtherance of its business carried on outside of the Cayman Islands. Specifically, any proposed company applying for registration as an exempted limited company under the Companies Law must show that its objects are to be carried out mainly outside of the Cayman

Islands. However, in order to further those objects outside of the Cayman Islands, it may effect and conclude contracts and exercise all of its powers necessary for the carrying on of its business, within the Cayman Islands. In other words, it can employ staff or agents in the Cayman Islands and hold offices in the Cayman Islands.

31. Despite that the Intermediate Fund was restricted from carrying on business within the Cayman Islands upon its incorporation, this did not mean that the Intermediate Fund had no presence at all in the Cayman Islands. The registered office of the Intermediate Fund has been situated in the Cayman Islands since its inception and continues to be so situated. The registered office of the Intermediate Fund is located at Intertrust Corporate Services (Cayman) Limited, 190 Elgin Avenue, George Town, Grand Cayman KY1-9005, Cayman Islands, and is where the Intermediate Fund submitted its annual filings to the Registrar of Companies.

32. Under private international law, shares are deemed to be situated in the country where they can be effectively dealt with between the shareholder and that company. See *160088 Canada Incorporated v. Socoa International Limited* [1998] CILR 256. By virtue of the fact that the register of members of the Intermediate Fund is maintained at its registered office, any issues relating to the title of those shares will be governed by the laws of the Cayman Islands.

33. Importantly, the restriction on the carrying on of an "exempted" company's business inside the Cayman Islands no longer applies after a company commences liquidation in the Cayman Islands. Under the Liquidation Orders, the Petitioners were granted various powers to enable them to effectively carry out their duties, but it remains the case that if they are contemplating actions that are not of automatic statutory application or as otherwise expressly provided in the Winding Up Order, they are required to seek the Grand Court's approval.

34. In practice, this means that the management of the Intermediate Fund is being conducted by the Petitioners largely from within the Cayman Islands, and the management of the Intermediate Fund's liquidation process remains wholly subject to the supervision of the Grand Court. Accordingly, I believe that the center of main interests for the Intermediate Fund is in the Cayman Islands, given the substantial nexus between them.

Pursuant to Section 1746 of Title 28 of the United States Code, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 15th day of August, 2017.

_____
**IAN LAMBERT**